# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE LYNN LANG, | Case No. 1:13-cv-00590-SAB |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING FOR FURTHER DEVELOPMENT OF THE RECORD |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendants. | |

Plaintiff Stephanie Lynn Lang ("Plaintiff") filed this action seeking judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying Plaintiff's application for benefits under the Social Security Act.  (ECF No. 1.)  All parties have consented to the jurisdiction of a United States Magistrate Judge for all purposes. (ECF Nos. 9, 10.)

Plaintiff applied for Social Security benefits due to impairments stemming from her degenerative disc disease.  For the reasons set forth below, Plaintiff's appeal from the final decision of the Commissioner is granted in part and denied in part and the Court remands this action back to the Commissioner for further administrative proceedings to inquire into any possible conflicts between the testimony of the vocational expert and the information in the Dictionary of Occupational Titles.

/ / /

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff applied for Supplemental Security Income benefits on August 7, 2007.  (AR 198.)  Plaintiff's application was denied on February 25, 2008.  (AR 110.)  Plaintiff requested reconsideration of the denial on March 31, 2008.  (AR 116.)  Plaintiff's application was denied after reconsideration on May 27, 2008.  (AR 118.)  On June 26, 2008, Plaintiff requested a hearing.  (AR 125.)

On April 21, 2010, a hearing took place before Administrative Law Judge John Heyer ("the ALJ").  (AR 54.)  On May 14, 2010, the ALJ issued a written decision and found that Plaintiff was not disabled.  (AR 97.)

On October 15, 2010, the Appeals Council reversed the May 14, 2010 decision of the ALJ and remanded this case for further consideration of issues pertaining to Plaintiff's need for a walker, the medical opinions, and the possible effect of Plaintiff's obesity on her ability to work. (AR 102-104.)

On April 4, 2012 a second hearing took place before the ALJ.  (AR 82.)  On April 11, 2012, the ALJ issued a second written decision and found that Plaintiff was not disabled.  (AR 21.)  The Appeals Council denied Plaintiff's request for review on February 22, 2013.  (ECF No. 1.)

### A.    Hearing Testimony

At the first hearing on April 21, 2010, the ALJ solicited testimony from Plaintiff as well as vocational expert Kenneth Ferra ("the VE").  (AR 30.)  At the second hearing on April 4, 2012, the ALJ solicited testimony from Plaintiff as well as vocational expert Alina Sala.[1]  (AR 56.)

Plaintiff testified that she was born on August 26, 1971.  (AR 33.)  Plaintiff can drive a car.  (AR 33.)  Plaintiff last worked in August 2006 as "an order filler."  (AR 33.)  Previously, Plaintiff was a cashier at a grocery store, a cashier at a gas station, a cook, and worked at

---

[1] For the sake of convenience, the Court will refer to both vocational experts as "the VE," unless it is necessary to distinguish the two.

Bosselman Travel Center.  (AR 33-34.)

Plaintiff alleges that her disability began in August 2006.  (AR 35.)  Plaintiff contends that she is disabled because she has to use a walker and has issues with her legs and arms.  (AR 40.)  Plaintiff also has back pain.  (AR 41.)

Plaintiff testified that she could probably lift ten pounds and can lift a gallon of milk.  (AR 41, 61.)  Plaintiff can walk 20-30 steps without her walker before her knees start to hurt and she has to sit down.  (AR 41.)  Plaintiff can walk 40-50 steps with her walker.  (AR 41.)  Plaintiff can stand for 10-20 minutes.  (AR 41, 61.)  Plaintiff can sit for about thirty minutes.  (AR 41-42.)

In a typical day, Plaintiff will have coffee for breakfast, wash her cup, and go into the living room to watch television on her recliner.  (AR 42.)  Plaintiff will use the restroom on her own throughout the day.  (AR 42.)  At the first hearing, Plaintiff stated that she sometimes watches TV from her bed and uses the computer.  (AR 42.)  However, at the second hearing, Plaintiff stated that most of her time is spent watching TV in bed and that she does not use the computer.  (AR 62.)  If she needs anything, Plaintiff's kids will get it for her.  (AR 42.)  Plaintiff can make her own sandwiches.  (AR 42.)  Plaintiff no longer vacuums the house or does the laundry.  (AR 42-43.)  At the first hearing, Plaintiff testified that she can go to the store but cannot walk there very long, with grocery trips generally taking 20-25 minutes.  (AR 42-43.)  However, at the second hearing, Plaintiff testified that she does not go grocery shopping.  (AR 62.)

Plaintiff also has problems with vertigo and falls down.  (AR 44.)  Plaintiff has braces on both legs and on her arm.  (AR 44.)  Plaintiff has pain in the lower part of her fingers in her dominant hand, and will sometimes drop things.  (AR 44-45.)  Plaintiff has problems with incontinence.  (AR 45.)  Plaintiff has trouble moving her head to the left.  (AR 48.)  Plaintiff suffers from depression.  (AR 48.)  At the second hearing, Plaintiff testified that she recently suffered from severe epicondylitis in both elbows.  (AR 65.)  Plaintiff requires help dressing and taking a shower.  (AR 70-71.)

Plaintiff takes Vicodin, Lasix, Pepcid, Soma, Prozac, Klor-Con, lovastatin and Ambien.  (AR 45.)  Plaintiff has been seen by treating doctor Dr. Awadalla since July 2007.  (AR 45.)

1    Plaintiff completed school through the twelfth grade.  (AR 46.)  Plaintiff is 5'4" and

2    weighed 248 pounds at the time of the first hearing, but her normal weight is 180 pounds.  (AR

3    46.)  At the time of the second hearing, Plaintiff's weight was 229 pounds.  (AR 68.)

4         **B.    VE Testimony**

5         At the first hearing on April 21, 2010, the VE testified that Plaintiff's prior work could be

6    classified as various cashier positions (light, semi-skilled), order puller (medium, unskilled),

7    home attendant (medium, semi-skilled) and cook (medium, skilled).  (AR 51.)

8         The ALJ presented the VE with the following first hypothetical:

9    •    Can lift 10 pounds;

10   •    Can sit for six hours in an eight hour day; and

11   •    Can stand and walk for two hours in an eight hour day.

12   (AR 51.)  The VE testified that a person with such hypothetical limitations could perform work

13   as an assembler, order clerk and nut sorter.  (AR 51.)

14        The ALJ provided the VE with a second hypothetical with the same limitations set forth

15   in the first hypothetical, with the additional limitation that such person requires the use of a

16   walker.  (AR 52.)  The VE testified that the additional limitation would not affect her ability to

17   perform the jobs described in response to the first hypothetical.  (AR 52.)  The VE further

18   testified that those jobs are sedentary and that a limitation in the ability to move one's head from

19   side to side might affect the nut sorter job, but would have no effect on the ability to perform the

20   order clerk or assembler jobs.  (AR 52.)

21        Plaintiff's attorney presented the VE with the following third hypothetical:

22   •    Can stand and walk less than two hours;

23   •    Can sit less than two hours;

24   •    Restricted from no heat or cold extremes;

25   •    Restricted from using the feet repetitively;

26   •    No hand use repetitively;

27   •    Cannot climb, balance, stoop, or crawl; and

28   •    Can occasionally lift ten pounds.

4

1  (AR 52.)  The VE testified that a person with such hypothetical limitations cannot perform any
2  jobs.  (AR 52.)

3       At the second hearing, the VE opined that, generally, use of a walker would not preclude
4  someone from performing "bench or desk-type jobs."  (AR 77.)

5       The ALJ provided the VE with the following fourth[2] hypothetical:

6  • Can lift 20 pounds;

7  • Can complete an eight hour workday if given the option to alternate between sitting and
8    standing in 30 minute increments;

9  • Unable to do overhead work; and

10 • Cannot do more than occasional bending and twisting.

11 (AR 77.)  The VE testified that a person with such hypothetical limitations could not perform
12 any of Plaintiff's prior work, but could perform work as an addresser, charge account clerk, or
13 telephone quotation clerk.  (AR 78-79.)  The ALJ also noted that the sit-stand option is not
14 discussed in the Dictionary of Occupational Titles ("DOT").  (AR 78.)  The VE testified that she
15 possessed expertise outside the DOT that permitted her to opine on the availability of jobs that
16 accommodate the sit-stand option, stemming from her experience working with employers that
17 helped individuals with disabilities go to work and from conducting job analyses and ergonomic
18 evaluations with employers.  (AR 78.)

19      The ALJ provided the VE with a fifth hypothetical which was identical to the fourth
20 hypothetical but further limiting the lifting limitation to only ten pounds.  (AR 79.)  The VE
21 testified that a person with such hypothetical limitations could still perform the jobs identified in
22 response to the fourth hypothetical.  (AR 79.)

23      Plaintiff's attorney provided the VE with the following sixth hypothetical:

24 • Can never lift or carry 10 pounds;

25 • Can sit 30 minutes;

26 • Can stand 15 minutes; and

27 _____
[2] For clarity, the Court will refer to the three hypotheticals presented at the first hearing as the first, second and third
   hypotheticals and will refer to the three hypotheticals presented at the second hearing as the fourth, fifth and sixth
28 hypotheticals.

1   • Can walk 20 minutes.

2   (AR 80.)  The VE testified that a person with such hypothetical limitations could not perform

3   any work.  (AR 80.)

4   **C.    Medical Records**

5      The administrative record includes Plaintiff's medical records from treating physician Dr.

6   Nagy Awadalla, MD (AR 315-332), an orthopedic examination from Dr. Juliane Tran, M.D. (AR

7   333-336), a Physical Residual Functional Capacity Assessment from Dr. Mohamed O. Nawar,

8   M.D. (AR 337-341), a Psychiatric Review Technique from Dr. Harvey Biala, M.D. (AR 342-

9   352), medical records from Plaintiff's treating physicians (AR 353-396, 402-487), and a Physical

10  Residual Functional Capacity Assessment from Dr. Anne M. Khong, M.D. (AR 397-401).

11  **D.    The ALJ's Findings**

12     The ALJ made the following findings of fact and conclusions of law in his April 11, 2012

13  written decision:

14  • Plaintiff has not engaged in substantial gainful activity since August 7, 2007;

15  • Plaintiff has the following severe impairments: degenerative disc disease of the cervical

16     spine with a history of cervical spine fusion and obesity;

17  • Plaintiff does not have an impairment or combination of impairments that meets or

18     medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404,

19     Subpart P, Appendix 1;

20  • Plaintiff has the residual functional capacity to perform light work as defined in 20

21     C.F.R. 416.967(b) except the claimant: must be given the option to alternate between

22     sitting or standing in thirty minute increments; is unable to perform overhead work; and

23     can only occasionally bend and twist;

24  • Plaintiff is unable to perform any past relevant work;

25  • Plaintiff was born on August 26, 1971 and was 35 years old, which is defined as a

26     younger individual age 18-49, on the date the application was filed;

27  • Plaintiff has at least a high school education and is able to communicate in English;

28  • Transferability of job skills is not material to the determination of disability because

6

1   using the Medical-Vocational Rules as a framework supports a finding that the claimant

2   is "not disabled," whether or not Plaintiff has transferable job skills;

3   • Considering Plaintiff's age, education, work experience, and residual functional capacity,

4   there are jobs that exist in significant numbers in the national economy that Plaintiff can

5   perform;

6   • Plaintiff has not been under a disability, as defined in the Social Security Act, since

7   August 7, 2007, the date the application was filed.

8   (AR 15-20.)

9   **II.**

10  **LEGAL STANDARDS FOR JUDICIAL REVIEW OF SOCIAL SECURITY**
**DETERMINATIONS**

11

12  An individual may obtain judicial review of any final decision of the Commissioner of

13  Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  The Court "reviews the

14  Commissioner's final decision for substantial evidence, and the Commissioner's decision will be

15  disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v.

16  Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a

17  scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)

18  (internal quotations and citations omitted).  "Substantial evidence is 'such relevant evidence as a

19  reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Richardson v.

20  Perales, 402 U.S. 389, 401 (1971)).  "[A] reviewing court must consider the entire record as a

21  whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill,

22  698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

23  However, it is not this Court's function to second guess the ALJ's conclusions and substitute the

24  Court's judgment for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)

25  ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's

26  conclusion that must be upheld.")

27  / / /

28  **III.**

7

## DISCUSSION AND ANALYSIS

Plaintiff raises three arguments on appeal: 1) that there does not exist a significant number of jobs which Plaintiff can perform because the numbers provided by the VE were flawed, 2) that Plaintiff cannot perform the jobs identified by the VE because the ALJ provided the VE with an incomplete hypothetical, and 3) the ALJ did not provide legally sufficient reasons to reject Plaintiff's testimony regarding her limitations.

### A.   The ALJ Did Not Err in Accepting the VE's Testimony Regarding the Number of Jobs Which Plaintiff Can Perform

Plaintiff contends that the ALJ erred in accepting the VE's testimony regarding the number of jobs that exist in the national and regional economy that Plaintiff can perform. Plaintiff contends that the VE did not describe how he calculated the number of jobs existing in the national and regional economy.  Moreover, Plaintiff contends that the numbers provided by the VE are not consistent with the data with the Bureau of Labor Statistics.

As an initial matter, the Court finds that the ALJ did not err in relying on the VE's testimony regarding the number of jobs existing in the national and regional economy.  The Court rejects Plaintiff's attempt to fashion an argument out of ignorance.  Plaintiff chose not to inquire as to the VE's methodology at the hearing and now attempts to prove that the numbers were made up due to the absence of evidence that the numbers were not made up—a void in the record that Plaintiff chose not to fill.  Plaintiff cites no authority, and the Court is not aware of any authority, which requires the VE to testify as to his methodology for calculating the number of jobs available at every hearing before an ALJ.  On the contrary, the Ninth Circuit has stated:

> An ALJ may take administrative notice of any reliable job information, including information provided by a VE.  [Citation.] A VE's recognized expertise provides the necessary foundation for his or her testimony.  Thus, no additional foundation is required.

Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).  While Plaintiff correctly notes that VEs are not permitted to "make up" numbers, the Court will not presume that the VE in this case "made up" job numbers simply from the absence of evidence that the VE did not "make up" the numbers.  Since Plaintiff has not demonstrated that the ALJ's reliance on the VE's testimony

1    was improper, the Court finds that the ALJ's findings pertaining to the number of jobs that exist

2    in the economy for the jobs identified by the VE is supported by substantial evidence.

3        As a separate matter, the Court must consider whether this case should be remanded for

4    consideration of the new evidence presented by Plaintiff regarding the number of jobs available

5    that Plaintiff can perform.  "[I]n determining whether to remand a case in light of new evidence,

6    the court examines both whether the new evidence is material to a disability determination and

7    whether a claimant has shown good cause for having failed to present the new evidence to the

8    ALJ earlier."  Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001).

9        In order to justify remand based on new evidence, Plaintiff must "demonstrate that there

10   is a 'reasonable possibility that the new evidence would have changed the outcome of the

11   administrative hearing."  Mayes, 276 F.3d at 462.  The Court finds that Plaintiff's evidence

12   would not have changed the outcome of the administrative hearing.

13       The Court notes that Plaintiff translated the DOT job codes provided by the VE to

14   Standard Occupational Classification (SOC) job codes in order to research the Bureau of Labor

15   Statistics' employment data.  Plaintiff translated the DOT job codes to SOC job codes using a

16   website, http://onetonline.org/crosswalk/, which apparently translates job codes from one type to

17   another.  It is worth noting that Plaintiff provides no evidence that demonstrates the accuracy of

18   this job code conversion website.  According to this website, DOT code 205.367-014 "Charge

19   Account Clerk" translates to SOC code 43-4111.00 "Interviewers, Except Eligibility and Loan."

20   DOT Crosswalk Search, http://www.onetonline.org/crosswalk/DOT?s=205.367-014&g=Go (last

21   visited Mar. 7, 2014).  DOT code 237.367-046 "Telephone Quotation Clerk" translates to SOC

22   code  43-4171.00  "Receptionists  and  Information  Clerks."   DOT  Crosswalk  Search,

23   http://www.onetonline.org/crosswalk/DOT?s=237.367-046&g=Go  (last  visited  Mar.  7,  2014).

24   DOT code 209.587-010 "Addresser" translates to SOC code 43-9022.00 "Word Processors and

25   Typists."   DOT  Crosswalk  Search,   http://www.onetonline.org/crosswalk/DOT?s=209.587-

26   010&g=Go (last visited Mar. 7, 2014).

27   / / /

28       Even if the Court accepts the accuracy of these job code translations, the Court's own

research using the same resources cited by Plaintiff revealed that the Bureau of Labor Statistics' job numbers are much higher than those reported by Plaintiff.  For example, Plaintiff contends that "the federal Bureau of Labor published statistics regarding the number of Charge Account Clerk jobs nationally as available based on census data amounts to at most 1,730 jobs."  (Pl.'s Opening Brief 5:8-10.)  The Court visited the Bureau of Labor Statistics' website and found that it reported that the national estimate for this job is actually 196,660.  Bureau of Labor Statistics, Occupational Employment Statistics for Interviewers, Except Eligibility and Loan, http://www.bls.gov/oes/current/oes434111.htm (last visited Mar. 7, 2014).  This number is in-line with the number reported by the VE and far greater than the 1,730 number claimed by Plaintiff.

Similarly, Plaintiff claimed that the Bureau of Labor Statistics reports only 4,750 total national jobs for Telephone Quotation Clerk/Receptionists and Information Clerks."  (Pl.'s Opening Brief 5:13-18.)  The Court found that the actual number reported by the Bureau of Labor Statistics is 966,150.  Bureau of Labor Statistics, Occupational Employment Statistics for Receptionists and Information Clerks, http://www.bls.gov/oes/current/oes434171.htm (last visited Mar. 7, 2014).  Plaintiff claimed a mere 16,220 national jobs for Addresser/Word Processors and Typists.  (Pl.'s Opening Brief 6:6-17.)  The Court found the number to be 96,560.  Bureau of Labor Statistics, Occupational Employment Statistics for Word Processors and Typists, http://www.bls.gov/oes/current/oes439022.htm (last visited Mar. 7, 2014).  These numbers are consistent with the numbers reported by the VE.

It appears that Plaintiff deflated the job numbers by arbitrarily reporting the number of available jobs in a specific subset of industries.  The Bureau of Labor Statistics website allows a visitor to query the employment statistics for a particular job across all industries or only in a selected subset of specified industries.  In this case, it appears Plaintiff fashioned queries for only a small subset of industries, thus excluding relevant jobs in other industries.  For example, for "Charge Account Clerk" jobs, Plaintiff only reported the number of such jobs in the industries "Depository Credit Intermediation," "Nondepository Credit Intermediation," and "Business Support Services."  Plaintiff offers no justification for only reporting the number of jobs in these

1    three industries as opposed to reporting the number of "Charge Account Clerk" jobs across all

2    industries.  There is no contention that Plaintiff cannot work in "Charge Account Clerk" jobs

3    outside these three industries.  Plaintiff similarly reported deflated job numbers in a small subset

4    of industries for the Telephone Quotation Clerk jobs and the Addresser jobs.

5         Plaintiff's evidence is negligent at best and possibly a deliberate misrepresentation to the

6    Court.  In light of the Court's own research, the Court finds that the new evidence presented by

7    Plaintiff would not have changed the outcome at the administrative hearing and therefore will not

8    remand this action on this basis.

9         **B.    The ALJ Did Not Err by Providing the VE with an Incomplete Hypothetical**

10        Plaintiff argues that the ALJ erred by providing the VE with an incomplete hypothetical.

11   Specifically, Plaintiff contends that the hypothetical presented to the VE express Plaintiff's

12   limitation as "unable to do overhead work" whereas the ALJ described Plaintiff's impairment as

13   "limit[ed] ... ability to engage in overhead reaching."  (AR 17.)  Plaintiff provides no persuasive

14   argument as to how these two descriptions are distinguishable.  Moreover, the ALJ's findings

15   expressed Plaintiff's limitations in the same manner as it was presented to the VE: "unable to

16   perform overhead work."  (AR 16.)  Accordingly, the Court finds that the hypothetical was not

17   incomplete.

18        **C.    The ALJ Erred by Failing to Inquire Whether the VE's Testimony Conflicts**
         **        with the DOT**
19

20        Plaintiff argues that the ALJ erred by failing to resolve a potential conflict between the

21   VE's testimony and the information in the DOT.  The VE identified three jobs that Plaintiff

22   could perform.  However, the DOT states that the three jobs require frequent reaching—though it

23   does not specify whether it is overhead reaching or whether it is reaching in other directions.

24   Plaintiff's RFC states that she cannot perform overhead work, which the ALJ acknowledged was

25   a result of Plaintiff's restrictions in reaching.  (AR 17, 19.)

26        Generally, the ALJ has an affirmative duty to ask the VE about any possible conflict

27   between the VE's testimony and the information provided in the DOT.  Massachi v. Astrue, 486

28   F.3d 1149, 1152 (9th Cir. 2007).  This requirement is set forth in SSR 00-4p, which states that

1  the ALJ "will ask" the VE if the testimony provided is consistent with the DOT and obtain

2  reasonably explanations for any apparent conflict.  See also Massachi, 486 F.3d at 1152-53.

3      Here, the ALJ did not ask the VE whether his testimony conflicts with the DOT.

4  Moreover, a potential conflict between the VE's testimony and the DOT exists because the VE

5  testified that Plaintiff could perform three jobs which, according to the DOT, require frequent

6  reaching, which could potentially encompass frequent overhead reaching which Plaintiff's RFC

7  states she cannot perform.  Further administrative proceedings are necessary to address this

8  potential conflict.  Accordingly, the Court will remand this action for further administrative

9  proceedings consistent with this opinion.

10      **D.      The ALJ Did Not Err in Rejecting Plaintiff's Testimony**

11      Plaintiff argues that the ALJ failed to provide legally sufficient reasons to reject

12  Plaintiff's subjective testimony.   In rejecting Plaintiff's testimony, the ALJ cited (1)

13  inconsistencies between Plaintiff's testimony and the objective medical evidence, (2) a

14  significant treatment gap between August 2006 and July 2007, and (3) unremarkable and

15  conservative treatment records.

16      To determine whether a claimant's testimony regarding subjective pain or symptoms is

17  credible, the ALJ must engage in a two-step analysis.  Lingenfelter v. Astrue, 504 F.3d 1028,

18  1036 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented

19  objective medical evidence of an underlying impairment which could reasonably be expected to

20  produce the pain or other symptoms alleged."  Id. (internal quotations and citations omitted).

21  The ALJ found that Plaintiff satisfied this step, so the Court's analysis is limited to the ALJ's

22  analysis with respect to the second step.

23      At the second step, if there is no evidence of malingering, "the ALJ can reject the

24  claimant's testimony about the severity of her symptoms only by offering specific, clear and

25  convincing reasons for doing so."  Lingenfelter, 504 F.3d at 1036 (internal quotations and

26  citations omitted).

27  / / /

28      To determine whether the claimant's testimony regarding the

12

> severity of her symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

Id. The ALJ must also consider:

> the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities.

Id.

The ALJ noted that the "treatment notes, objective evidence, clinical findings and examining source opinions do not support the extent of limitations and the severity of pain alleged by the claimant." (AR 17.)  The ALJ cited Plaintiff's January 2008 consultative examination with Dr. Juliane Tran, M.D., where the clinical findings showed that Plaintiff had 5/5 motor strength, normal gait, normal sensory examination and normal reflexes. (AR 17.)  Dr. Tran opined that Plaintiff could perform light work, with no more than frequent overhead reaching, driving, climbing, balancing or working with heights. (AR 17.)  The Court finds that the ALJ properly cited Dr. Tran's findings as a basis to reject Plaintiff's subjective testimony.

The ALJ cited "a significant treatment gap from the amended onset date [August 2006] through July 2007." (AR 17.)  Plaintiff alleged that her disability began in August 2006, yet there was no record that Plaintiff sought treatment until July 2007.  The Court finds that the ALJ properly cited the significant treatment gap as a basis to reject Plaintiff's subjective testimony.

Finally, the ALJ cited Plaintiff's unremarkable and conservative treatment records as a basis to reject Plaintiff's subjective testimony.  The ALJ noted a July 2007 x-ray study of the cervical spine that showed normal findings and status post fusion at CS-C6. (AR 17.)  The x-ray studies of the hip, lumbar spine and thoracic spine revealed normal hips, mild hypertrophic degenerative disc disease at the mid thoracic spine and very minimal degenerative disc disease

1    and mild facet osteoarthritis of the lumbar spine.  (AR 17.)  In March 2008, Plaintiff had a

2    normal neurological assessment with normal reflexes, motor function and sensory function.  (AR

3    17.)  A March 2008 MRI revealed disc protrusions, disc desiccation and mild disc effusions at

4    L4-L5 and L5-S1 with no stenosis.  (AR 17.)  Plaintiff's treating physician recommended

5    conservative treatment consisting of physical therapy, soft tissue massage, heat and ultrasound.

6    (AR 17.)  Plaintiff's remaining treatment records were similar, with the exception of medical

7    source statements from Plaintiff's physicians, which the ALJ gave little weight since they were

8    not consistent with the rest of the treatment record.  (AR 17-18.)  The Court finds that the ALJ

9    properly cited Plaintiff's unremarkable and conservative treatment records as a basis to reject

10   Plaintiff's subjective testimony.

11        Based upon the foregoing, the Court finds that the ALJ's assessment of Plaintiff's

12   credibility was proper and supported by substantial evidence.

13                    **E.        Remand For Further Administrative Proceedings**

14        The Court must determine whether this action should be remanded to the Commissioner

15   with instructions to immediately award benefits or whether this action should be remanded to

16   this Commissioner for further administrative proceedings.  "Remand for further administrative

17   proceedings is appropriate if enhancement of the record would be useful."  Benecke v. Barnhart,

18   379 F.3d 587, 593 (9th Cir. 2004).  "Conversely, where the record has been developed fully and

19   further administrative proceedings would serve no useful purpose, the district court should

20   remand for an immediate award of benefits."  Id.

21        In this case, the ALJ's erred by failing to inquire whether the VE's testimony conflicted

22   with the DOT.  Accordingly, remand for further proceedings is appropriate to enhance the record

23   for the purposes of determining whether a conflict exists and whether it can be resolved.

24   Therefore, the Court will remand for further administrative proceedings

25                                **IV.**

26                        **CONCLUSION AND ORDER**

27        For the reasons set forth above, the Court finds that the ALJ erred by failing to inquire

28   whether the VE's testimony conflicts with the DOT.  Specifically, the ALJ did not inquire as to

1   the possible conflict between the VE's testimony that could perform work as a charge account

2   clerk, a telephone quotation clerk or an addresser, despite the fact that those jobs require frequent

3   reaching and Plaintiff cannot perform overhead work.  The Court finds that remand for further

4   administrative proceedings is necessary to further develop the record and address the issue of the

5   possible conflict between the VE's testimony and the DOT before a determination of disability

6   can be made.  The ALJ's decision was proper and supported by substantial evidence in all other

7   respects.

8         Accordingly, it is HEREBY ORDERED that:

9        1.    Plaintiff's appeal from the decision of the Commissioner of Social Security is

10           GRANTED in part and DENIED in part;

11       2.    This action is REMANDED this action back to the Commissioner for further

12           administrative proceedings consistent with this opinion;

13       3.    JUDGMENT is entered in favor of Plaintiff Stephanie Lynn Lang and against

14           Defendant Commissioner of Social Security; and

15       4.    The Clerk of the Court is directed to CLOSE this action.

16

17  IT IS SO ORDERED.

18    Dated:  **April 8, 2014**                                   

                                       UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28